```
                   UNITED STATES DISTRICT COURT

                     DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :
                               : Criminal No.  3:03CR159(EBB)
        v.                     :
                               :
AVERY HANSLEY                  : January 4, 2005
```

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

On August 24, 2004, the defendant Avery Hansley appeared before the court and entered a guilty plea to count one of the indictment, which charges him with distributing 50 grams or more of cocaine base ("crack" cocaine) in violation of 21 U.S.C. § 841(b)(1)(A)(iii).

The Pre-sentence Report (PSR) grades the defendant's offense level at level 34, based on relevant conduct of 189.5 grams[1] of crack cocaine.  PSR at ¶ 13.  At the plea hearing, the defendant admitted that he sold 2¼ ounces of crack (approximately 63 grams) to a government witness on February 20, 2003.  Since then, the defendant has met with the United States and provided a complete description of his relevant conduct.[2]  Accordingly, the United

---

[1] The parties have stipulated in the plea agreement the Blakely does not alter the drug quantity or the Guidelines range in this case.

[2] On October 21, 2004, the defendant met with members of the Drug Enforcement Administration's task force and ultimately explained the particulars of his crack cocaine dealing.  Because the government afforded Mr. Hansley proffer protection for the meeting, whereby his honest answers will not be used to increase his Sentencing Guidelines range, the government will not delve into the details of the defendant's drug trafficking activities.  The government is obviously prepared to answer any of the court's questions about the extent to the defendant's narcotics trafficking

-2-

States submits that the defendant's offense level should be adjusted downward by five levels -- three levels for acceptance of responsibility and two levels for the safety valve.  The parties agree that the defendant's Sentencing Guidelines range is 87 to 108 months imprisonment, and a fine range of $15,000 to $4,000,000.  There is no mandatory minimum sentence in this case.

In his Sentencing Memorandum filed on November 8, 2004, the defendant seeks a downward departure for family circumstances and responsibilities.  For the reasons discussed below, the United States respectfully objects to the defendant's motion for a downward departure.  Instead, the court should impose a sentence at the low end of the controlling range and a fine commensurate with Mr. Hansley's financial status.

### Objection to Downward Departure

The defendant argues that a downward departure for extraordinary family circumstances is appropriate in this matter.  The United States respectfully disagrees.  The Sentencing Guidelines provide that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  U.S.S.G. § 5H1.6.[3]  Thus, it is only in the extraordinary case

---

activities at the sentencing hearing, however.

[3] Effective October 27, 2003, § 5H1.6 and its commentary were amended.  While the new Guideline does not control the instant case, the amended commentary explicitly embraces some of the

-3-

that a defendant's family circumstances will warrant a downward departure.  As the Second Circuit noted in <u>United States v. Johnson</u>, 964 F.2d 124, 128 (2d Cir. 1992), "[t]he Sentencing Commission understood that many defendants shoulder responsibilities to their families, their employers, and their communities.  Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration."  <u>See</u> <u>also</u>, <u>United States v. Tejeda</u>, 146 F.3d 84, 87 (2d Cir. 1998)(per curiam)(quoting <u>United States v. Johnson</u>, 964 F.2d 124, 128 (2d Cir. 1992)).  The disruption of parental relationships is to be expected when a parent engages in criminal activity.  <u>See</u> <u>United States v. Canoy</u>, 38 F.3d 893, 907 (7th Cir. 1994)(citing numerous cases); <u>United States v. Cacho</u>, 951 F.2d 308, 311 (11th Cir. 1992)(noting that innumerable defendants could do doubt argue that imposition of a prison sentence would harm family relationships).

"Because the Guidelines disfavor departure based on family responsibilities, such a departure is not permitted except in extraordinary circumstances."  <u>United States v. Smith</u>, 331 F.3d

---

limiting criteria found in the Second Circuit's pre-amendment case law, including requirements that "[t]he loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available," making the defendant's loss "irreplaceable to the defendant's family." U.S.S.G. § 5H1.6 comment. (n.1(B)(ii) & (iii)).

-4-

292, 294 (2d Cir. 2003).  A downward departure for family circumstances "must be reserved for situations that are truly extraordinary."  United States v. Walker, 191 F.3d 326, 338 (2d Cir. 1999).

In support of his claim that a downward departure is warranted on this ground, the defendant offers that he supports four children:  a 15 year old daughter and three 11 year old boys (by three different women).  PSR at ¶¶ 46 - 52.  In addition to supporting these four children financially and emotionally, the defendant cares for his ailing mother and for Ms. Melissa Prince, the mother of one of his children, who is battling Lou Gehrig's Disease.  See Def's Sentencing Memorandum at pp. 2-3.  The United States does not dispute these facts, but respectfully submits that the defendant's family circumstances as set forth in the PSR and his memorandum do not rise to the level of "extraordinary," which is the controlling standard.

First, Mr. Hansley's children will continue to live with their mothers, all of whom are employed full-time.  PSR at ¶¶ 46 - 53.  The defendant derives his legitimate income, moreover, from rental incomes on several properties.  As such, he is arguably in a better position than most defendants to continue to generate money while he is incarcerated.  For example, a defendant supporting his family with an hourly wage cannot expect to maintain that income stream while in jail.  By contrast, Mr.

-5-

Hansley's rents will still be due at the end of every month, regardless of where Mr. Hansley is located.  This situation, quite frankly, cannot be characterized as extraordinary.[4]

Second, with respect to the defendant's ailing mother, the PSR makes clear that the defendant is one of nine children, six of whom live in Hartford.  In fact, the defendant's mother lives with one of her children, and four other children (one of whom is a retired nurse) live on the same street as their mother.  PSR at ¶¶ 35 - 45.  Thus, while it is laudable that the defendant cares for his ailing mother, the government respectfully submits that the situation cannot be characterized as "extraordinary" absent a showing that none of these other siblings can provide assistance for the woman.

Third, with respect to Ms. Prince's battle with ALS, the government does not mean to minimize either the importance of Mr. Hansley to Ms. Prince's life or what is undoubtedly her courageous battle against this insidious disease, but the PSR does explain that Ms. Prince recently relocated to her aunt's one floor residence, and that her aunt "helps when she can."  PSR ¶ 55.  In addition, the PSR notes that during a September 21, 2004

---

[4] To the extent the defendant provides monetary support, it is not clear whether that is done pursuant to court order.  While the defendant believes that there are support orders in place, the Probation Officer reports that the State of Connecticut does not have any support orders relative to Mr. Hansley on file.  PSR at ¶ 51.

-6-

home visit, Ms. Prince stated that she "has not given any thought to the defendant going to jail." Perhaps by the time of the sentencing hearing the picture regarding Ms. Prince's health and whether any alternative arrangements have been explored will be clearer. For example, it is unclear at this juncture whether – and, if so, when – Ms. Prince will need professional assistance in addition to and ultimately in lieu of the care provided by Mr. Hansley or anyone else close to the family.

In short, the defendant's situation is far better than that faced by other defendants who have not been found to have extraordinary family responsibilities warranting leniency from the court. See, e.g., United States v. Webb, 49 F.3d 636, 638-39 (10th Cir. 1995)(defendant, who was sole caretaker of son, not deemed to have extraordinary family circumstances); United States v. Brown, 29 F.3d 953 (5th Cir. 1994)(single mother of two young children, who could stay with great-grandmother, not deemed to have extraordinary family circumstances). Here, the defendant's children will continue to reside with their mothers, who are gainfully employed. There also seems to be a relatively decent support network in place to provide for both the defendant's ailing mother and his former girl friend. Finally, if the defendant can locate someone to manage his rental properties, he will be able to maintain an income stream to help support his four children and their mothers while he is incarcerated. Thus

-7-

while the circumstances are unfortunate, the situation does not rise to the extraordinary level contemplated by the guidelines.

The Second Circuit has made clear that family responsibility departures are not favored, and instead reserved for only the truly extraordinary situation.  With the exception of a few cases where the defendant has a unique and irreplaceably vital role in the care taking of other minor or disabled family members, see e.g., United States v. Johnson, 964 F.2d 124, 128-30 (2d Cir. 1992)(no abuse of discretion to depart where defendant had sole responsibility for raising four young children); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991)(no abuse of discretion to depart where defendant responsible for two children, ages 4 and 11, and for disabled, dependant father and grandmother); United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997)(upholding departure based upon (a) the defendant's primary role in upbringing of two young children, given wife's limited language skills and lack of ability to earn sufficient money to support the family, and (b) commitments to both the defendant' mother, who had little income, and his father, who was critically ill and might require his assistance in the future),[5] the Second

---

[5] The facts of Galante barely sufficed under abuse-of-discretion review.  See Galante, 111 F. 3d at 1037-39 (Kearse, J., dissenting).  In denying the government's petition for *en banc* review, the full Court made clear that the panel's majority decision was "limited to its precise facts and not an invitation to district judges to depart downward in the absence of truly exceptional family circumstances." United States v. Galante, 128

-8-

Circuit has *reversed* downward departures, even under a deferential, abuse-of-discretion standard of review.  In <u>United States v. Smith</u>, 331 F.3d 292 (2d Cir. 2003), for example, the Court reversed a family-circumstances departure for a defendant who "had a close relationship with his two-year-old son and played a major role in caring for him, including dropping him off at day care, feeding him dinner, bathing him, and putting him to bed," and where the defendant's incarceration would result in his wife having to discontinue her college studies.  <u>Id</u>. at 293.  The Court observed that the defendant was "not the sole care giver or financial supporter of his [2-year-old] son" and that the concerns for the son "may be alleviated by the availability of Smith's mother and half-sister for child care." <u>Id</u>. at 294.  To the extent that the defendant's college studies would be disrupted, the Court noted that "[i]t is not unusual, however, for a convicted defendant's incarceration to cause some hardship in the family."  <u>Id</u>.

Similarly, in <u>United States v. Madrigal</u>, 331 F.3d 258, 260 (2d Cir. 2003), the Second Circuit reversed a family-circumstances departure that was premised on a female defendant's relationship with her six children.  Focusing again on the availability of alternative care givers, the Court

---

F.3d 788 (2d Cir. 1997)(*en banc*)(*per curiam*); <u>see</u> <u>also</u> <u>United States v. Faria</u>, 161 F.3d 761, 762 (2d Cir. 1998) (citing *en banc* court's limitation of <u>Galante</u> to its unique facts).

-9-

observed the absence of evidence that the defendant was "the only person capable of providing adequate care for the youngest children" and that "[t]here was also evidence that the family as a whole remained cohesive, that [the defendant's] three older children were doing well and were available to care for their younger siblings, and that [the defendant's] extended family was also available for care giving." Id. at 260.  Accordingly, the Second Circuit concluded that "[u]nfortunate as the circumstances described by the court are, they are not 'extraordinary,'" and that "[t]hey are the common collateral damage of imprisonment and are far enough removed from those circumstances that existing case law has found exceptional that we must conclude that the district court acted outside of permissible limits in granting the downward departure for family circumstances." Id.

In several other cases, our appellate court has reversed downward departures where, as here, the facts were far from exceptional. See United States v. Carrasco, 313 F.3d 750, 756-57 (2d Cir. 2002) (reversing family-circumstance departure for defendant who had three children and an ill father for whom he should provide financial support; "being the father of three children is in no sense an exceptional circumstance" and financial support for the father was not unique because "in view of the 'considerable personal success' achieved by Carrasco's siblings"); United States v. Faria, 161 F.3d 761, 762-63 (2d Cir.

-10-

1998) (reversing family-circumstance departure for defendant who provided financial support to wife and three minor children; "although Faria pays child support, he no longer lives with his children, and his ex-wife earns approximately $40,000 per year," such that "we cannot conclude that Faria's family is uniquely dependent on the support it currently receives from him"); United States v. Tejeda, 146 F.3d at 87-88 (reversing family-circumstances departure for defendant with wife and two children; "the existence of a stable family (a wife and two children)--something that is by no means extraordinary-- does not satisfy the 'exceptional hardship' criterion established by our precedents").

## Conclusion

Wherefore, the United States respectfully submits that a sentence at the low end of the controlling range, with a fine commensurate with the defendant's ability to pay such a sanction, is an appropriate resolution to this substantial crack-cocaine trafficking case.

                              Respectfully submitted,

                              KEVIN J. O'CONNOR
                              UNITED STATES ATTORNEY

            By: _____
                  MICHAEL J. GUSTAFSON
                  ASSISTANT UNITED STATES ATTORNEY
                  157 Main Street
                  New Haven, CT  06510
                  Federal Bar No. CT01503
                  Telephone No. (203) 821-3700

-11-

## **CERTIFICATION**

 I hereby certify that a copy of the foregoing motion was sent via first class mail on this _____day of January, 2005, to:

| | |
|---|---|
| Nicholas Cardwell, Esq. | Jennifer L. Amato |
| Cardwell, Cardwell & | Probation Officer |
| Smoragiewicz | U.S. Courthouse, Rm 725 |
| 108 Oak Street | Hartford, CT 06103 |
| Hartford, Connecticut 06106 | |

_____
MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY